UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
----------------------------------------------------------------X
NELSON GUZMAN,

                Petitioner,

         -against-

JAMIE LaMANNA, SUPERINTENDENT

               Respondent.
----------------------------------------------------------------X

For Online Publication Only

**MEMORANDUM AND ORDER**
17-CV-05424 (JMA)

**APPEARANCES:**

    Nelson Guzman, pro se
    *For Petitioner*

    Thomas C. Costello, Assistant District Attorney
    Suffolk County District Attorney's Office
    200 Center Drive
    Riverhead, NY 11901
    *Attorney for Respondent*

**AZRACK, United States District Judge:**

Petitioner Nelson Guzman ("Guzman"), proceeding pro se, moves this court for a writ of habeas corpus, pursuant to 28 U.S.C. § 2254. Respondent has moved to dismiss the petition as time-barred. (See ECF No. 7.) For the reasons discussed below, Guzman's claims are time-barred and the petition is DENIED in its entirety.

## I. BACKGROUND

### A. Factual Background

On October 1, 1999, following a jury trial for murder in the second degree and assault in the first degree, a judgment of conviction was entered against Guzman in the County Court, Suffolk County. (Pet. ¶¶ 1-5.) Guzman was sentenced to an indeterminate term of 25-years to life incarceration for the murder conviction, consecutive to a 23-year determinate period of

1

incarceration for the assault conviction. (Affirmation of Thomas C. Costello in Support of Respondent' Motion to Dismiss ("Costello Aff.") ¶ 2.)

**B. Post-Conviction Proceedings**

    **1. The Direct Appeal**

Guzman appealed his conviction to the Appellate Division, Second Department (the "Second Department"). (Pet. ¶ 9.) His conviction was unanimously affirmed on December 8, 2003. People v. Guzman, 2 A.D. 3d 536 (N.Y. App. Div. 2d Dep't 2003). Guzman sought leave to appeal the Appellate Division's Order to the New York State Court of Appeals. On March 29, 2004, the Court of Appeals denied leave to appeal. People v. Guzman, 2 N.Y.3d 740 (2004). Guzman did not appeal to the United States Supreme Court. (Costello Aff. ¶ 3.)

    **2. Retention of Stephen M. Goldenberg**

Guzman claims that soon after the Court of Appeals denied his motion for leave to appeal his judgment of conviction, Guzman's mother hired an attorney, Stephen M. Goldenberg, to explore the possibility of filing post-conviction motions for relief. The record does not provide the exact date on which Guzman's mother first contacted Mr. Goldenberg nor any documents explicitly outlining the nature of his engagement. In opposing the instant motion to dismiss, Guzman provides three letters between him and Mr. Goldenberg. The first letter dated March 16, 2005 is a letter from Mr. Goldenberg to Guzman, written in Spanish. (See Pet., Attach. H, Ex. C, at 23, ECF No. 3-3.)[1].

Guzman translated the letter into English as follows:

    I reviewed all of your archives and see no remedies concerning the same.

---

[1] Guzman incorporates by reference in the petition various attachments and exhibits filed with his Motion to Appoint Counsel dated September 13, 2017, ECF No. 3. All citations to these documents are to the ECF document and page number stamped at the top of each page.

2

> If you have any objections that are not in your archives, for example, in relation to your previous lawyer, you have the right to file a C.P.L. 440.10. This must be filed before March 26, 2005 to preserve any subsequent federal right. Inform me of your decision as soon as possible.

(Pet., Attach. H at 1, ECF No. 3-2.)

The second letter is from Guzman to Goldenberg, dated August 15, 2005, written in English:

> In your last letter, dated March 16, 2005—which was written in Spanish—, you informed me that you reviewed my file and that you see no more remedies in respect to the same. You also informed me that if I wanted to file a CPL § 440.10 motion, I must do so before March 26, 2005 to preserve any subsequent federal claims. To inform you immediately.
>
> On or about March 18, 2005, in response to your inquiry, I informed you that I have nothing further to raise in the state courts.
>
> I presume you filed my habeas petition already, since you were hired for that purpose. Please send me a copy of whatever motions or applications you filed on my behalf, especially my 28 USC § 2254.
>
> I am concerned with your silence, since if you have not file [sic] my 2254 application, I must be time barred pursuant to the AEDPA's statute of limitations.
>
> If I don't hear from you, I will write to the District Court inquiring whether you filed my 2254 application. Do not inform my mother to inform me of whatever I need to know. Please inform me directly.
>
> Thank you. Expecting your response as soon as possible, I remain.

(Pet., Attach. H. at 25-26.)

The third letter is from Mr. Goldenberg to Guzman, dated September 1, 2005 and written in English:

> I am writing in response to your letter of August 15, 2005, which I just received last week. In my earlier letter I asked if you had any CPL Section 440.10 grounds in state court. You indicated on March 18, 2005 that you had nothing further to raise in the state courts. You also repeated this point in your letter of August 15, 2005.

3

> I had hoped you had an issue we could raise in state court that could either provide relief in the state courts or become the basis of a federal habeas corpus petition. In reviewing your trial transcript and the briefs and decisions in the state courts, I do not see any issue, which could be raised in a habeas corpus petition. Consequently, I have not filed any habeas corpus petition on your behalf.
>
> You are incorrect as to why I was hired. I was not hired in order to file a federal habeas corpus petition. I was originally retained by your family to search the record to *see if there was any basis to go further*. If one were found, then a retainer for *that* work would be agreed upon. I would not have agreed to file a habeas corpus petition in advance without knowing if there was a valid federal claim. Filing of frivolous claims is sanctionable.
>
> I hope that this response clarifies your confusion on these issues.

(Pet., Attach. H at 26-27.)

Between January 2007 and June 2008, Guzman contacted at least four legal organizations seeking representation. One attorney, Abraham Abramovsky, explained to Guzman the fee structure required for retaining him and the other entities, all of which provide pro bono legal services, explained that they could not represent Guzman for various reasons. (Pet., Attach. H., Ex. H at 40-43.)

### 3. The First Coram Nobis Petition

On February 12, 2009, Guzman filed a petition for a writ of error coram nobis to the Second Department. (Pet. ¶ 11, Attach. C.) In that petition, Guzman alleged that appellate counsel was ineffective because counsel "fail[ed] to raise significant and obvious issues that would have rendered reversal or modification likely" and because counsel "fail[ed] to object that the evidence was legally insufficient to convict [Guzman]." (Id.) Guzman's petition was denied in June 2009. (Costello Aff. ¶ 5.) Guzman submitted a motion for reargument on the grounds that "the Second Department overlooked or misapprehended the facts or the law, or for some reason mistakenly

arrived at its June 23, 2009 [decision and order]." (Pet. ¶ 11, Ex. C.) Guzman's motion for reargument was denied in 2011. (Costello Aff. ¶ 5.)

### 4. The Motion to Vacate

On March 25, 2010, Guzman filed a motion to vacate his judgment of conviction pursuant to New York Criminal Procedure Law § 440.10 motion (the "§ 440.10 motion") on the basis that that trial counsel was ineffective. (Pet. ¶ 11, Attach. D at 9.) On May 3, 2010, Guzman's § 440.10 motion was denied. (Pet. ¶ 11.)

Between December 2014 and October 2016, Guzman contacted at least twelve legal organizations about his case. One attorney, Mary P. Davidson, appears to have provided Guzman with some guidance regarding filing a C.P.L. § 440.10 for ineffective assistance of trial counsel and a coram nobis petition for ineffective assistance of appellate counsel. (Pet., Attach. H., Ex. H at 53, 56-59.)

### 5. The Second Coram Nobis Petition

On July 3, 2017, Guzman filed a second petition for a writ of error coram nobis in the Second Department. (Pet. ¶ 11.) In that motion, Guzman argued that appellate counsel was ineffective due to his failure to argue that the appellate court should have "reduced the conviction on the assault count based on a lack of legal sufficient evidence of serious physical injury at the grand jury." (Pet. ¶ 11, Attach. E at 11.) The Second Department denied Guzman's motion on December 27, 2017. People v. Guzman, 156 A.D.3d 902, 65 N.Y.S.3d 796 (N.Y. App. Div. 2d Dep't 2017), leave to appeal denied sub nom. People v. Baby, 31 N.Y.3d 981 (2018), and leave to appeal denied, 31 N.Y.3d 984 (2018).

### 6. The Instant Petition

On September 12, 2017, Guzman filed the instant petition for habeas relief under 28 U.S.C. § 2254. Guzman asserts the following grounds for relief:

1) the trial court's exclusion of relevant and admissible evidence denied him a fair trial;

2) the People failed to prove his guilt beyond a reasonable doubt;

3) the People failed to prove his guilt of assault in the first degree beyond a reasonable doubt;

4) the trial court erred when it refused to charge third-degree assault as a lesser-included offense of assault in the first degree;

5) the trial court erred when it refused to charge second-manslaughter as a lesser-included offense of depraved indifference murder; and

6) his sentence of 48 years to life is harsh and excessive.

(See Pet. ¶ 12, Attach. F at 12-20.)

On October 19, 2017, Respondent filed a motion to dismiss the petition on the grounds that it is untimely. (See ECF No. 7.) On December 5, 2017, Guzman filed his opposition to Respondent's motion to dismiss. (See ECF No. 10.)

## II. DISCUSSION

### A. Standards of Review

#### 1. Overview of AEDPA

Congress enacted the Antiterrorism and Effective Death Penalty Act ("AEDPA"), Pub. L. No. 104–132, 110 Stat. 1214 (1996), to restrict "the power of federal courts to grant writs of habeas corpus to state prisoners." Williams v. Taylor, 529 U.S. 362, 399 (2000) (O'Connor, J., concurring). Under AEDPA, a prisoner may file a writ of habeas corpus "only on the ground that he is in custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2254(a). To make that showing, the petitioner must demonstrate: (1) the exhaustion of state

6

remedies, (2) the absence of a procedural bar, and (3) the satisfaction of AEDPA's deferential review of state court decisions.  See id. § 2254.

### 2. Limitations Period

AEDPA provides a one-year statute of limitations during which petitioners must file their petitions for writs of habeas corpus.  See 28 U.S.C. § 2244(d)(1).  The limitations period runs from the latest of four triggering dates, including "the date on which the judgment became final by the conclusion of direct review or the expiration of the time for seeking such review." 28 U.S.C. § 2244(d)(1)(A).

A judgment becomes final for AEDPA purposes at "either the completion of certiorari proceedings in the United States Supreme Court, or—if the prisoner elects not to file a petition for certiorari—the time to seek direct review via certiorari has expired."  Williams v. Artuz, 237 F.3d 147, 151 (2d Cir. 2001).  Therefore, where a petitioner has not sought review by the Supreme Court, the AEDPA limitations period begins to run at the expiration of the 90-day period during which direct review from the Supreme Court can be sought.  See Saunders v. Senkowski, 587 F.3d 543, 547 (2d Cir. 2009) (citing Williams, 237 F.3d 147).

The limitations period is tolled while a "properly filed application for State post-conviction or other collateral review with respect to the pertinent judgment or claim is pending." 28 U.S.C. § 2244(d)(2); Smith v. McGinnis, 208 F.3d 13, 16 (2d Cir. 2000).  However, statutory tolling is not applicable if the relevant post-conviction motions were submitted after the expiration of the limitations period.  See Doe v. Menefee, 391 F.3d 147, 154 (2d Cir. 2004).

### 3. Equitable Tolling

AEDPA's one year limitations period is subject to equitable tolling in "rare and exceptional circumstances."  Walker v. Graham, 955 F. Supp. 2d 92, 103 (E.D.N.Y. 2013) (quoting Walker v.

Jastremski, 430 F.3d 560, 564 (2d Cir. 2005)).  AEDPA's one-year limitation period is subject to equitable tolling only if a petitioner "shows (1) that he has been pursuing his rights diligently, and (2) that some extraordinary circumstance stood in his way and prevented timely filing."  Holland v. Florida, 560 U.S. 631, 632 (2010) (internal quotations omitted); see also Chrysler v. Guiney, 14 F. Supp. 3d 418, 433 (S.D.N.Y 2014), aff'd, 806 F.3d 104 (2d Cir. 2015) (stating that AEDPA's limitation period may be equitably tolled if petitioner can show extraordinary circumstances prevented the timely filing of a habeas corpus petition and that petitioner acted with reasonable diligence during that time period).  "Whether a circumstance is extraordinary depends not on 'how unusual the circumstance alleged to warrant tolling is among the universe of prisoners, but rather how severe an obstacle it is for the petitioner endeavoring to comply with AEDPA's limitations period.'"  Rivas v. Fischer, 687 F.3d 514, 538 (2d Cir. 2012) (quoting Diaz v. Kelly, 515 F.3d 149, 154 (2d Cir. 2008)).  Furthermore, the petitioner must "demonstrate a causal relationship between the extraordinary circumstance on which the claim for equitable tolling rests and lateness of his filing, a demonstration that cannot be made if the petitioner, acting with reasonable diligence, could have filed on time notwithstanding the extraordinary circumstances."  Valverde v. Stinson, 224 F.3d 129, 134 (2d Cir. 2000).

### B. Application

#### 1. Equitable Tolling

The Court of Appeals denied Guzman's leave to appeal on March 29, 2004.  Because Guzman did not appeal his case to the Supreme Court, his decision became final for purposes of AEDPA on June 28, 2004, upon the expiration of the 90-day period during which he could have sought review. Therefore, the statute of limitations for his habeas corpus petition began running on June 28, 2004 and expired one year later on June 28, 2005.  Guzman filed his habeas petition

on September 12, 2017, over twelve years later.  Although Guzman has filed multiple post-convictions motions, all were filed after June 28, 2005 and therefore have no tolling effect on the limitations period.  See Menefee, 391 F.3d at 154.  Thus, absent equitable tolling, the petition is untimely.

Guzman concedes that his petition is barred by AEDPA's statute of limitations, but argues that he is entitled to equitable tolling because Mr. Goldenberg was negligent in failing to communicate with Guzman before the AEDPA statutory deadline, Mr. Goldenberg miscalculated the limitations period, and he subsequently abandoned Guzman.  Guzman claims that Mr. Goldenberg's short-comings "in combination with [Guzman's] background, i.e., limited education; inability to communicate, read or write in English; lack of legal assistance/Spanish interpreter and lack of legal materials readily available in Spanish in the facility law library worked collectively to cause [Guzman] to miss the original filing deadline and justifiably tolls the statute of limitations period."  (Opp. 2.)  However, none of the foregoing amounts to extraordinary circumstances such that prevented Guzman from timely filing his petition.  See Holland, at 632.  Furthermore, Guzman has failed to demonstrate that he pursued his rights diligently during the relevant period.

     *i.   Extraordinary Circumstances*

Guzman states that "immediately" after the Court of Appeals denied leave to appeal, Guzman's mother, on behalf of Guzman, retained Mr. Goldenberg "for the purposes of undertaking representation, which included, the processing and filing of a habeas corpus." (Opp. 3.)  Guzman's mother paid Goldenberg $6,000 for his services.  (Id.)  Guzman argues that Goldenberg waited until March 16, 2005 to contact Guzman, nearly a year after Guzman's allegedly mother retained Goldenberg.  (Id. at 9.)  Guzman also alleges that it was clear from his

9

correspondence with Goldenberg that they agreed Mr. Goldenberg would file a habeas petition on Guzman's behalf and that Mr. Goldenberg should have done so. (Id. at 4.) Instead, Guzman alleges, Mr. Goldenberg waited until what he believed was ten days before the statute of limitations expired to contact Guzman, which deprived him of his ability to make an informed decision about the course of representation. (Id. at 4, 7.)

"Because a lawyer is the agent of his client, the client generally 'must bear the risk of attorney error.'" Rivas, 687 F.3d at 538 (quoting Holland, 560 U.S. at 650). In order to constitute extraordinary circumstances such that equitable tolling is appropriate, "attorney negligence must be so egregious as to amount to an effective abandonment of the attorney-client relationship." Rivas, 687 F.3d at 538. Guzman's allegations fail to establish any negligence on behalf of Mr. Goldenberg, let alone that Mr. Goldenberg's conduct was sufficiently egregious to warrant equitable tolling in this case.

Guzman provides no evidence that he and Mr. Goldenberg agreed that Mr. Goldenberg would file a habeas petition of Guzman's behalf. Indeed, Guzman admits that he communicated to Mr. Goldenberg that he "[had] nothing further to raise in the state courts" by letters dated March 18, 2005 and August 15, 2005. (Pet., Attach. H., Ex. D at 26, ECF No. 3-3.)

Furthermore, as Respondent correctly points out, the letters Guzman attaches from other attorneys whom he sought to retain support Mr. Goldberg's position, and illustrate that attorneys ordinarily proceed as Mr. Goldberg claims he did in this case. Specifically, attorneys will generally evaluate a prisoner's case before accepting a retainer and assignment to file a petition on the prisoner's behalf. For example, in a letter dated January 23, 2015, attorney Brian Shiffrin told Guzman:

> My fee for reviewing the full record of your case, including the record on appeal, and all post-conviction filings, to determine if there are issues that I

10

> can raise on your behalf would be $8,000. If I find such an issues [sic] or issues, my fee to then file a motion for writ of error Coram no is would be an additional $8,000.

(Pet., Attach. H., Ex. H at 46.)

Another letter dated January 2, 2007 from attorney Abraham Abramovsky also advised Guzman that that there was a two-stage process to retain him for the purpose of filing of any post-trial motions:

> First, I would charge a fee to read the record and determine whether there are any viable issues to pursue. If I do find such issues, I will charge an additional fee to perfect a post-trial motion on your behalf.

(Pet., Attach. H., Ex. H at 40.)

Even assuming, *arguendo*, that Mr. Goldenberg had agreed to file a habeas petition on Guzman's behalf and then failed to do so, it is not clear that such conduct would be egregious enough to demonstrate extraordinary circumstances. Moreover, even if it could, as explained below, Guzman's claims clearly fail as he failed to diligently pursue his rights.

To the extent that Guzman argues that Mr. Goldenberg miscalculated the statute of limitations period, this argument fails as the Supreme Court has squarely held that "[a]ttorney miscalculation [of the limitations period] is simply not sufficient to warrant equitable tolling, particularly in the postconviction context where prisoners have no constitutional right to counsel." Lawrence v. Fla., 549 U.S. 327, 336–37 (2007); see also Martinez v. Superintendent of E. Corr. Facility, 806 F.3d 27, 33 (2d Cir. 2015), as corrected (Nov. 12, 2015) ("Ordinarily, of course, a litigant who relies on his attorney bears the risk of his agent's negligence (with respect to missed deadlines and otherwise)."). Furthermore, the Court notes that even if Mr. Goldenberg's erred in his calculation of the filing deadline, that error did not prevent Guzman from timely filing as Mr.

11

Goldenberg calculated the filing date as being three months *before* the actual deadline, giving Guzman more, not less, time to file his petition.

Guzman also argues that his inability to speak English should equitably toll the AEDPA limitations period. (Opp. 7-8.) Although in some circumstances a prisoner's inability to read English may be sufficient to justify equitable tolling, the petitioner must demonstrate that his language deficiency was a "severe . . . obstacle . . . to comply[ing] with AEDPA's limitations period." Diaz v. Kelly, 515 F.3d 149, 154 (2d Cir. 2008). Furthermore, "the diligence requirement of equitable tolling imposes on the prisoner a substantial obligation to make all reasonable efforts to obtain assistance to mitigate his language deficiency." Diaz, 515 F.3d at 154.

Here, Guzman indicates that his lack of English proficiency was an obstacle despite his reasonable efforts. First, he claims that he was not assigned an interpreter on direct appeal and therefore, he was unable to participate in his appeals process. (Opp. 8.) However, Guzman fails to explain how this prevented him from timely filing a federal habeas petition. Guzman also notes that a non-legal clerk who helped him file a writ of error coram nobis in 2009 and his C.P.L. § 440 motion in 2010 was transferred to another facility, leaving Guzman without language assistance. (Opp. 9.) This argument is also unavailing because the clerk's transfer occurred several years after the running of the AEDPA limitations period. Moreover, Guzman could have used that clerk in 2009 and 2010 to file at least some semblance of a habeas petition in federal court, but failed to do so. Guzman also references a library clerk who translated Goldenberg's June 2005 letter, (see Opp. at 4) demonstrating that Guzman had access to translation assistance during the AEDPA limitations period.

Next, Guzman argues that the facility library did not provide the Jailhouse Lawyers Manual in translation until September 1, 2009. (Opp. at 9.) However, this does not rise to the level of

extraordinary circumstances such that equitable tolling is warranted. See Quezada v. Capra, No. 13-CV-8574, 2015 WL 2130217, at *2 (S.D.N.Y. May 6, 2015) ("[T]he unavailability of Spanish-language resources inside a prison is in and of itself insufficient to entitle a petitioner to equitable tolling."); see also Francis v. Miller, 198 F. Supp. 2d 232, 235 (E.D.N.Y. 2002) (finding that limited access to legal assistance and the prison law library, inter alia, were not deemed extraordinary enough to justify equitable tolling); Ortiz v. United States, No. 12-CV-5236, 2013 WL 308681, at *2 (E.D.N.Y. Jan. 25, 2013) (finding that limited education and limited access to legal research materials were not extraordinary circumstances for the purpose of equitable tolling). Furthermore, Guzman filed his habeas petition more than seven years after this manual was provided. Finally, Guzman has not shown that he made all reasonable efforts—including seeking help outside the facility—to obtain assistance to mitigate his language deficiency. Lastly, the Court notes that Mr. Goldenberg's first letter was written to Guzman in Spanish and that Guzman's reply letter was written in English, which seriously undermines Guzman's argument that his English language skills were an impediment to the timely filing of his petition.

Accordingly, neither Mr. Goldenberg's conduct nor Guzman's lack of English language proficiency constitute sufficiently severe obstacles to compliance with the limitations period to warrant equitable tolling.

    ii.   *Diligent Pursuit of Rights*

Even if Guzman was able to demonstrate that some extraordinary circumstances delayed the filing his petition, he must still meet the diligence requirement. See Valverde, 224 F.3d at 134 ("[A]ssuming that these extraordinary circumstances occurred, preventing the petitioner from filing his petition for some length of time, we must still determine whether they prevented him

from filing his petition *on time*.") (internal quotation marks and citation omitted); see also Jenkins v. Greene, 630 F.3d 298, 302 (2d Cir. 2010).

To warrant equitable tolling, a petitioner must be diligent even in the face of an extraordinary circumstance. "[T]he party seeking equitable tolling must have acted with reasonable diligence throughout the period he seeks to toll." Smith, 208 F.3d at 17. The same standard of diligence is required from petitioners who proceed pro se as from petitioners who hire an attorney. Doe, 391 F.3d at 175. If reasonable diligence is not exercised "in attempting to file after the extraordinary circumstances began, the link of causation between the extraordinary circumstances and the failure to file is broken, and the extraordinary circumstances therefore did not prevent timely filing." Valverde, 224 F.3d at 134. The retention of an attorney does not absolve a petitioner of his duty to diligently pursue the filing of his petition. Doe, 391 F.3d at 175 ("Even where the extraordinary circumstances on which the petitioner rests his claim involve attorney incompetence, the petitioner must still demonstrate that he himself made reasonably diligent attempts to ensure that his petition was filed on time.")

Guzman has not demonstrated the diligence necessary to trigger equitable tolling. Compare Holland, 560 U.S. at 633 (diligence requirement satisfied where petitioner had "diligently pursued his rights by writing [attorney] Collins numerous letters seeking crucial information and providing direction, by repeatedly requesting that Collins be removed from his case, and by filing his own *pro se* habeas petition on the day he learned his AEDPA filing period had expired.") and Dillon v. Conway, 642 F.3d 358, 363 (2d Cir. 2011) (petitioner "did everything that could have been expected of him and . . . went to extraordinary ends to have a [petition timely] filed on his behalf") (internal citation and quotation marks omitted) with Chung v. United States, No. 11-CV-3579, 2012 WL 194981, at *2 (E.D.N.Y. Jan. 23, 2012) (diligence requirement not

satisfied where petitioner failed to show that counsel's alleged misconduct was responsible for his near sixteen-year delay in filing) and Williams v. Heath, No. 11-CV-112, 2012 WL 580224, at *3 (E.D.N.Y. Feb. 16, 2012) (diligence requirement not satisfied where petitioner failed to show that his inability to obtain appellate briefs was causally connected to a three-year delay in the filing of his habeas corpus petition).

Guzman does not offer an explanation as to why he waited nearly six months to follow up with Mr. Goldenberg after Guzman's March 18, 2005 letter. He also argues that he exercised diligence because he sought legal assistance after Mr. Goldenberg's alleged abandonment. (See Opp. 9-10.) However, based on Guzman's submissions, he did not begin to seek further legal assistance until December 2006, (see Pet., Attach. H, Ex. H. at 40), well over a year after his last communication with Mr. Goldenberg and eighteen months after the running of the limitations period. Furthermore, Guzman received a response from Mr. Abramovsky in January of 2007 indicating he thought there may be viable post-conviction remedies to pursue on Guzman's behalf, (see id.), yet Guzman waited until 2017 to file his petition. Although Guzman claims that this delay was due in part to his inability to pay for counsel and his difficulty with the English language, these proffered justifications are insufficient to establish reasonable diligence during the ***more than 12-year delay*** between the expiration of the statute of limitations and the filing of Guzman's petition. See Baldayaque, 338 F.3d at 153 (stating that lack of funds is merely one factor to consider in the diligence analysis); Diaz, 515 F.3d at 154. (finding that the diligence requirement had not been met where "there is no allegation of any efforts to contact anyone outside the prison who might assist in making them aware, in their language, of legal requirements for filing a habeas corpus petition, nor what efforts were made to learn of such requirements within their places of confinement."). Here, Guzman contacted at least sixteen legal organizations between 2007 and

15

2016 seeking counsel, however there is no evidence whatsoever indicating that Guzman sought help from anyone outside the prison to make him aware of the legal requirements for filing his habeas petition in Spanish. The Court also notes that there are multi-year gaps—for example between 2005 and 2007 and between 2010 and 214—during which it appears that Guzman did not contact anyone about his case at all. Moreover, Guzman made multiple filings in state court during 2009 and 2010. However, after those requests were denied in 2011, Guzman did not file anything else in either state or federal court until 2017—*six years later*— when he filed his federal habeas petition and a second coram nobis petition.

Accordingly, Guzman fails to show that Mr. Goldenberg's alleged negligence coupled with Guzman's limited education and English language skills was causally connected to Guzman's failure to file his habeas corpus petition before the running of the limitations period.

**2. Actual Innocence**

Finally, actual innocence is an equitable exception to the statute of limitations. To "present a successful gateway claim of actual innocence a petitioner must present 'evidence of innocence so strong that a court cannot have confidence in the outcome of the trial unless the court is also satisfied that the trial was free of nonharmless constitutional error.'" Rivas, 687 F.3d at 541 (quoting Schlup v. Delo, 513 U.S. 298, 316 (1995)). As the Second Circuit has explained,

> To satisfy the Schlup standard, a claim of actual innocence must be both 'credible' and 'compelling.' For the claim to be 'credible,' it must be supported by new reliable evidence—whether it be exculpatory scientific evidence, trustworthy eyewitness accounts, or critical physical evidence—that was not presented at trial. For the claim to be "compelling," the petitioner must demonstrate that more likely than not, in light of the new evidence, no reasonable juror would find him guilty beyond a reasonable doubt—or to remove the double negative, that more likely than not any reasonable juror would have reasonable doubt.

Rivas, 687 F.3d at 514 (internal citations and quotation marks omitted).

Here, Guzman, who does not rely on any new evidence, cannot show actual innocence.

### III. CONCLUSION

The Court has considered all of Guzman's arguments and finds that the petition is untimely and that equitable tolling is not warranted. Accordingly, Guzman's petition is DENIED. A certificate of appealability shall not issue because Guzman has not made a substantial showing that he was denied a constitutional right. See 28 U.S.C. § 2253(c)(2). The Court certifies that any appeal of this Order would not be taken in good faith, and thus in forma pauperis status is denied for the purposes of any appeal. Coppedge v. United States, 369 U.S. 438, 444–45 (1962). The Clerk of the Court is respectfully directed to serve notice of entry of this Order on all parties and to close the case.

**SO ORDERED.**
Dated: August 15, 2018
Central Islip, New York

                                          /s/ (JMA)
                                      JOAN M. AZRACK
                                      UNITED STATES DISTRICT JUDGE